IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

BRIDGET M. BISHOP,               )
                                 )
        Plaintiff,               )
                                 )     No: 3:08-1032
        v.                       )     Judge Echols/Bryant
                                 )     **Jury Demand**
WOODBURY CLINICAL LABORATORY,    )
INC., et al.,                    )
                                 )
        Defendants.              )

### MEMORANDUM AND ORDER

        Defendant Woodbury Clinical Laboratory, Inc. ("Woodbury")
has filed its motion for summary judgment on plaintiff's sexual
harassment claims (Docket Entry No. 39). As grounds for this
motion, Woodbury asserts that there are no genuine issues of
material fact, and that it is entitled to judgment as a matter of
law pursuant to what has become known as the _Faragher/Ellerth_
affirmative defense.

        Plaintiff has filed a response in opposition (Docket
Entry No. 58) in which she maintains that genuine issues of
material fact exist regarding (1) whether plaintiff was
constructively discharged by Woodbury and (2) whether Woodbury has
established both elements of the _Faragher/Ellerth_ defense.

        Woodbury has filed a reply (Docket Entry No. 62).

        Upon consent of the parties, this case has been referred
to the undersigned Magistrate Judge to conduct all proceedings,

including entry of judgment, pursuant to 28 U.S.C. § 636(c).

(Docket Entry No. 21).

　　　　For the reasons stated below, the Court finds that there are genuine issues of material facts regarding the elements of Woodbury's affirmative defense, and, therefore that Woodbury's motion for summary judgment must be **DENIED**.

### Standard of Review

　　　　A party may obtain summary judgment if the evidence establishes there are not any genuine issues of material fact for trial and the moving party is entitled to judgment as a matter of law. See Fed.R.Civ.P. 56(c); <u>Covington v. Knox County School Sys.</u>, 205 F.3d 912, 914 (6th Cir. 2000). The moving party bears the initial burden of satisfying the court that the standards of Rule 56 have been met. <u>See</u> <u>Martin v. Kelley</u>, 803 F.2d 236, 239 n.4 (6th Cir. 1986). The ultimate question to be addressed is whether there exists any genuine issue of material fact that is disputed. <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); <u>Covington</u>, 205 F.3d at 914 (citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325 (1986)). If so, summary judgment is inappropriate.

　　　　To defeat a properly supported motion for summary judgment, the nonmoving party must set forth specific facts showing that there is a genuine issue of material fact for trial. If the party does not so respond, summary judgment will be entered if appropriate. Fed.R.Civ.P. 56(e). The nonmoving party's burden of providing specific facts demonstrating that there remains a genuine

2

issue of material fact for trial is triggered once the moving party shows an absence of evidence to support the nonmoving party's case. Celotex, 477 U.S. at 325. A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. In ruling on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the nonmoving party, drawing all justifiable inferences in its favor. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

### Summary of Pertinent Facts

From the record before the Court, and for purposes of the subject motion, it appears that the following facts are undisputed.

Woodbury operated a clinical laboratory facility in Lebanon, Tennessee, at which its employees performed laboratory analyses on biological specimens, typically blood or urine, obtained from physicians, nursing homes and other health care provider customers. Plaintiff Bishop was hired by Woodbury in September or October 2006 as a courier. (Bishop depo., p. 13).[1] Her duties consisted primarily of driving to nursing homes, physicians' offices, and other Woodbury customers to pick up

specimens and deliver containers and other supplies used to obtain

---

[1]Various excerpts from plaintiff Bishop's deposition appear in the record at Docket Entry Nos. 42-1, 64-1 and 67).

3

laboratory specimens. (Bishop depo., p. 139).

Defendant Larry Butler was also employed by Woodbury at its Lebanon facility and at all pertinent times acted as plaintiff Bishop's supervisor. Shortly after Bishop began work, she and Butler discovered through conversations that Butler had served as the pastor of the church that Bishop had attended as a child, and that Butler had performed the ceremony at the wedding of Bishop's brother. (Bishop depo., p. 154). At least some degree of friendship apparently arose between Bishop and Butler, because at deposition Bishop testified that she confided in Butler about her children and matters relating to God and her faith. (Bishop depo., p. 156). Bishop testified that she regarded Butler as a friend. (Bishop depo., p. 158).

After Bishop had worked at Woodbury for a few months, Butler began giving her occasional hugs around the shoulders. (Bishop depo., pp. 160-67). Bishop testified that "it didn't bother [her] to have an occasional hug around the shoulders." (Bishop depo., p. 166). However, Bishop testified that over a period of months Butler's hugging escalated until he was hugging her "around the waist" as often as seven or eight times a day. In addition, Bishop stated that Butler often kissed her on the cheek or forehead in conjunction with theses hugs. (Bishop depo., p. 165). Bishop alleges that Butler told her he loved her, that he needed her, that she was "pretty," and that he commented when she

4

did not wear makeup. (Bishop depo., pp. 169-71). Bishop testified that Butler touched her breast on Christmas Eve 2007 as he placed a $100 bill Christmas gift to her into the pocket of her scrubs, and that, on that occasion, Butler kissed her on the lips. (Bishop depo., p. 174). Additionally, Bishop asserts that Butler occasionally picked lint from her work scrubs, including, on one occasion, the portion of her scrub top that extended over her buttocks. (Bishop depo., pp. 178-79).

Although Bishop testified that the hugging, kissing and verbal endearments by Butler during the last four months of her employment at Woodbury were unwanted and offensive to her, Bishop testified that she never told Butler to stop these actions, nor did she report these occurrences to Woodbury management before February 28, 2008. (Bishop depo., pp. 236, 431, 434).

## Analysis

Defendant Woodbury has filed its motion for summary judgment alleging that there exists no genuine issue of material fact and that it is entitled to judgment as a matter of law on Bishop's Title VII and THRA claims based upon what has become known as the _Faragher/Ellerth_ affirmative defense.

In 1998, the U.S. Supreme Court decided two cases on the same day: Faragher v. City of Boca Raton, 524 U.S. 775 (1998) and Burlington Industries, Inc. v. Ellerth, 524 U.S. 742 (1998). In these cases, the Supreme Court held that in cases alleging hostile

5

work environment caused by a supervisor where the supervisor has taken no tangible employment action against the employee, the defending employer may assert an affirmative defense to vicarious liability for the supervisor's actions by demonstrating (1) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (2) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise. <u>Faragher</u>, 524 U.S. at 807; <u>Ellerth</u>, 524 U.S. at 764-65.

Expanding on its ruling, the Court in <u>Faragher</u> stated as follows:

> An employer may, for example, have provided a proven, effective mechanism for reporting and resolving complaints of sexual harassment, available to the employee without undue risk or expense. If the plaintiff unreasonably failed to avail herself of the employer's preventive or remedial apparatus, she should not recover damages that could have been avoided if she had done so. If the victim could have avoided harm, no liability should be found against the employer who had taken reasonable care, and if damages could reasonably have been mitigated no award against a liable employer should reward a plaintiff for what her own efforts could have avoided.

524 U.S. 806-07.

Woodbury here argues that, based upon the undisputed record, (1) it had an anti-harassment policy published to all employees in its employee handbook and (2) plaintiff failed to avail herself of harassment reporting procedures provided in this

6

policy.  However, the Sixth Circuit has held that, in order for a defendant employer to satisfy the first prong of the _Faragher/Ellerth_ affirmative defense, proof of the mere existence of an anti-harassment policy is not enough.  The court must look behind the face of the policy to determine whether the policy was effective in practice in reasonably preventing and correcting any harassing behavior.  <u>Clark v. United Parcel Serv., Inc.</u>, 400 F.3d 341, 349 (a6th Cir. 2005).  The <u>Clark</u> court stated:

> While there is no exact formula for what constitutes a "reasonable" sexual harassment policy, an effective policy should at least: (1) require supervisors to report incidents of sexual harassment; (2) permit both informal and formal complaints of harassment to be made; (3) provide a mechanism for bypassing a harassing supervisor when making a complaint; and (4) provide for training regarding the policy.

400 F.3d at 349-50 (internal citations omitted).  <u>See</u> <u>also</u> <u>Cole v. Tennessee Watercraft, Inc.</u>, 2008 WL 2783520 at ** 9-10 (E.D. Tenn. July 15, 2008).

Although Woodbury's anti-harassment policy as published in its employee handbook arguably satisfies the first three requirements, the Court finds no evidence in this record that plaintiff Bishop, defendant Butler, or any other Woodbury employee received any training regarding the company's anti-harassment policy (Docket Entry No. 42-1, pp. 28-32).  Though Bishop admitted that she had signed an acknowledgment stating that she had been given a copy of the employment handbook and had been directed to

7

read it, she testified that she never read the handbook. (Bishop depo., pp. 149-50; Exhibit I, p. 1). The Court notes that when Bishop was asked at deposition why she never reported Butler's offending behavior to Woodbury management, she never testified that her ignorance of the reporting policy was a reason. Nevertheless, Woodbury bears the burden of proving the elements of its affirmative defense and, particularly in the present posture in which all reasonable conclusions and inferences must be drawn in plaintiff's favor, the Court finds that genuine issues of material fact remain for trial on the question whether Woodbury can establish the elements of the *Faragher/Ellerth* affirmative defense.

For these reasons, the Court finds that defendant Woodbury's motion for summary judgment must be **DENIED**.

It is so **ORDERED**.

s/ John S. Bryant
JOHN S. BRYANT
United States Magistrate Judge

8